UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

DAMON WAYNE GIBSON,          )
                             )
        Plaintiff,           )
                             )
v.                           )          No. 3:20-CV-399-DCP
                             )
KILOLO KIJAKAZI,[1]          )
Acting Commissioner of Social Security,   )
                             )
        Defendant.           )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 17]. Now before the Court are Plaintiff's Motion for Summary Judgment [Doc. 18] and Defendant's Motion for Summary Judgment [Doc. 22]. Plaintiff filed a reply to Defendant's motion on December 30, 2021 [Doc. 24]. Damon Wayne Gibson ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.      **PROCEDURAL HISTORY**

On March 12, 2018, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on January 4, 2018 [Tr. 12, 150–51]. After his application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 64, 82, 112–13]. A hearing was

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

held on September 11, 2019 [Tr. 28–52]. On September 25, 2019, the ALJ found that Plaintiff

was not disabled [Tr. 12–20]. The Appeals Council denied Plaintiff's request for review on July

20, 2020 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court

on September 8, 2020, seeking judicial review of the Commissioner's final decision under Section

405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions,

and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 4, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3.  The claimant has the following severe impairments:  a history of Miller-Fisher variant of Guillain-Barre Syndrome (GBS) and left shoulder disorder (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b).  The claimant can lift and carry, push and pull 20 pounds occasionally, and 10 pounds frequently. With normal breaks in an eight-hour day, he can sit for six hours, and stand and/or walk for six hours; can never climb ladders, ropes, and scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch and crawl; can tolerate occasional left upper extremity overhead reaching; can tolerate frequent left upper extremity handling and fingering; and can tolerate occasional exposure to vibration and dangerous hazards, such as unprotected heights, and moving machinery.

2

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 1, 1969 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 4, 2018, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 14–20].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

3

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises several arguments on appeal.[2] First, Plaintiff contends the ALJ erred by failing to consider whether he met the requirements of listing 11.22 (motor neuron disorders other than ALS) pursuant to 20 C.F.R. § 404.1526 and SSR 17-2p. Second, Plaintiff argues the ALJ improperly considered the opinion evidence and failed to adequately develop the record. Third, Plaintiff asserts the ALJ inappropriately assessed Plaintiff's subjective allegations regarding the intensity and severity of his symptoms. Plaintiff asks the Court to remand the Commissioner's final decision for a reassessment of the subjective and objective evidence, including the medical opinion evidence, and a reevaluation of the RFC finding. The Commissioner argues the ALJ's decision and determination of Plaintiff's final RFC were appropriate and supported by substantial evidence. Thus, the Commissioner submits that her final decision should be affirmed. The Court

---

[2] The Commissioner's brief includes a section arguing that the ALJ's Step Five finding is well supported [Doc. 23 pp. 20–21]; however, Plaintiff states in his reply that he did not make a Step Five argument and misspoke in his brief when he suggested the ALJ did not reach Step Five of the sequential evaluation process [Doc. 24 p. 5 n.1]. Plaintiff relates he relies solely on his objections regarding the ALJ's alleged failure to find a listing level impairment and regarding the RFC [*Id.*]. The Court therefore will not address the ALJ's Step Five analysis.

6

finds Plaintiff has not presented a valid basis for remand because the ALJ's listing analysis at Step Three was appropriate, the ALJ properly assessed the opinion evidence, and the ALJ appropriately evaluated Plaintiff's subjective allegations in crafting the final RFC. The Court will address the parties' arguments in turn.

### A.     ALJ's Evaluation of Applicable Listings

Plaintiff argues the ALJ erred because he failed to articulate how he analyzed any relevant listings based on Plaintiff's impairments and further that the ALJ failed to even identify any relevant listings. Plaintiff states this failure reflects that the ALJ misunderstood Plaintiff's impairments and limitations, as a proper listing assessment would have included an explanation of how the ALJ considered the requirements of listing 11.22 (motor neuron disorders other than ALS). Plaintiff asserts that, at Step Three of the sequential evaluation process, the ALJ must determine whether an individual's impairments meet or medically equal the criteria of an impairment, and the rules require the ALJ "to evaluate the evidence, compare it to the criteria of the listing, and give an explained conclusion" [Doc. 19 p. 7 (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)].

Listing 11.22 provides that an individual may be found to be presumptively disabled if there is "[d]isorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to . . . balance while standing or walking . . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff acknowledges that "extreme limitation, for purposes of listing level severity, would require the use of two canes rather than the single cane relied upon by [Plaintiff] to maintain balance while standing or walking;" however, "[a]t the very least, even if [Plaintiff] did not satisfy all of the requirements of the listing, the ALJ would have had to address the issue of listing level equivalence" [Doc. 19 p. 8 (citing 20 C.F.R. § 404.1526;

7

SSR 17-2p)]. Plaintiff argues the ALJ's failure to provide an evaluation and analysis for medical equivalence to listing 11.22 renders the ALJ's finding that Plaintiff did not have an impairment at a listing level severity unsupported by substantial evidence and necessitates remand. The Court finds this argument is without merit.

As an initial matter, the Court notes that,

> [a] claimant who meets or equals a listed impairment is presumptively disabled, without consideration of her age, education, or work experience . . . but she must first present medical findings that satisfy each criterion of the particular listing. A claimant can also show that her impairment, though unlisted, is "equivalent" to a listed one, but she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."
>
> The Commissioner applies a heightened evidentiary standard for presumptive disability cases under the listings than for cases that proceed to other steps in the sequential evaluation process. This is because the listings permit a finding of disability based solely on medical evidence, rather than a determination based on every relevant factor in a claim.

*Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 710 (6th Cir. 2013) (internal citations omitted).

The Sixth Circuit has stated that "the ALJ need not discuss listings that the applicant clearly does not meet . . . . If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Pasiak v. Comm'r of Soc. Sec.*, 800 F. App'x 301, 304 (6th Cir. 2019) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). "A claimant must do more than point to evidence on which the ALJ could have based his finding to raise a 'substantial question' as to whether he satisfied a listing . . . . Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal *every* requirement of the listing." *Id.* at 304–05 (internal citations omitted) (emphasis added).

8

The Commissioner argues that Plaintiff has identified no evidence demonstrating that his impairments could reasonably meet or equal every requirement of listing 11.22 because Plaintiff has failed to show a disorganization of motor function in two extremities resulting in an extreme limitation in the ability to balance while standing or walking. The Court agrees, as the neurological listings provide that an "extreme limitation" in the ability to balance while standing or walking "means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes." Listing 11.00D2b. As noted previously, Plaintiff acknowledges that he did not meet the strict terms of this standard because he used only a single cane for balance [Doc. 19 p. 8]. In addition, Plaintiff testified that he could walk for about 45 minutes at a time without a cane on a familiar, level surface [Tr. 33, 41–42]. Plaintiff has not raised a "substantial question" as to whether he would qualify as disabled under listing 11.22.

Furthermore, the Court finds the ALJ appropriately articulated his analysis at Step Three. In the decision, the ALJ stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" [Tr. 15]. "[W]here an ALJ finds that a claimant's impairments do *not* medically equal a listing, the ALJ 'is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment.'" *Webb o/b/o C.E. v. Comm'r of Soc. Sec.*, No. 2:20-CV-12004, 2021 WL 7005401, at *9 (E.D. Mich. Aug. 12, 2021) (quoting SSR 17-2p) (emphasis in original); *see also Cooper v. Comm'r of Soc. Sec.*, No. 18-12611, 2019 WL 2240711, at *5 (E.D. Mich. Apr. 8, 2019) ("[B]ecause the ALJ found that the evidence did not reasonably support a finding that [the plaintiff's] impairments medically equaled [a listing], she was *not* required to first obtain medical

9

expert evidence to support that finding, nor was she required to specifically articulate the bases for that conclusion.") (citing *Marvin v. Comm'r of Soc. Sec.*, No. 17-330, 2018 WL 4214339, at *3 n.3 (W.D. Mich. Aug. 10, 2018) (emphasis in original)).

Moreover,

> [a] conclusory "statement that the individual's impairment(s) does not medically equal a listed impairment" will generally "constitute sufficient articulation" because the ALJ's "articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three]."

*Webb*, 2021 WL 7005401 at *8 (citing SSR 17-2p). The Court therefore finds the ALJ's Step Three analysis was appropriate. Remand is not warranted on this basis.

### B. ALJ's Consideration of the Opinion Evidence

Plaintiff contends the ALJ failed to properly assess the opinion evidence. Specifically, Plaintiff states the ALJ rejected the opinion of one consultative examiner, barely addressed the opinion of another, and offered a somewhat incomprehensible assessment of a non-examining state agency consultant's opinion.[3]

As a threshold matter, because Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's ("SSA") new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*

---

[3] While Plaintiff does not initially identify the opinions to which he is referring, it is helpful to clarify that Plaintiff asserts that the ALJ rejected the opinion of consultative examiner Dr. Blaine and failed to properly assess the opinions of the two, non-examining state agency consultants— Dr. Greco, whose opinion Plaintiff asserts was barely addressed, and Dr. Chung, whose opinion Plaintiff claims was given an incomprehensible assessment by the ALJ. The Court will first address the ALJ's review of Dr. Blaine's opinion, and then perform a combined analysis of the ALJ's review of Dr. Greco's and Dr. Chung's opinions.

10

*(Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.
Under the new revised regulations, the Commissioner "will not defer or give any specific
evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative
findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The
Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative
medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's
relationship with the claimant, including length of the treatment relationship, frequency of
examinations, purpose of the treatment relationship, extent of the treatment relationship, and
examining relationship; 4) the source's specialized area of practice; and 5) other factors that would
tend to support or contradict a medical opinion, including but not limited to evidence showing a
medical source has familiarity with the other evidence in the claim or an understanding of the
agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520(a),
(c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. §
404.1520c(b)(2).

Moreover, the revised regulations have set forth new articulation requirements for the ALJs
in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case
> records containing many types of evidence from different sources, it is not
> administratively feasible for us to articulate in each determination or decision how
> we considered all of the factors for all of the medical opinions and prior
> administrative medical findings in your case record. Instead, when a medical
> source provides multiple medical opinion(s) or prior administrative medical
> finding(s), we will articulate how we considered the medical opinions or prior
> administrative medical findings from that medical source together in a single
> analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section,
> as appropriate. We are not required to articulate how we considered each medical
> opinion or prior administrative medical finding from one medical source
> individually;

11

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-cv-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Guided by these provisions in its analysis, the Court now turns to the respective opinions and prior administrative medical findings.

      1.    *Consultative Medical Opinion—Dr. Blaine*

The Court summarizes the ALJ's review of the opinion of consultative examiner Robert Blaine, M.D. ("Dr. Blaine") as follows. The ALJ noted that Dr. Blaine examined Plaintiff on November 19, 2018 [Tr. 17]. At that time, Plaintiff had intact sensation except for his left foot, normal gait, and normal station [*id.*], and Plaintiff had negative straight leg raise [*Id.*]. Plaintiff's shoulder abduction on the left was 130 degrees, anterior elevation 150 degrees bilaterally, internal rotation 80 degrees bilaterally, and external rotation 80 degrees on the left [*Id.*]. Dr. Blaine opined that Plaintiff could lift up to 15 pounds infrequently with the ability to stand or walk for two hours in an eight-hour workday [*Id.* (citing Tr. 541)]. The ALJ found that Dr. Blaine's opinion was not persuasive [*Id.*].

12

The ALJ explained his reasoning by noting various discrepancies between Dr. Blaine's opinion and the rest of the evidence of record as well as within Dr. Blaine's opinion itself. Despite the limitations contained in Dr. Blaine's opinion, the following was noted during Dr. Blaine's examination of Plaintiff: Plaintiff had full grip strength, normal gait without a cane, normal tandem and heel and toe walking, normal single-leg stand, an ability to squat two-thirds of the way to the floor, negative straight leg raising, full strength in the right extremities, and nearly full strength in the left extremities [Tr. 17, 540–41]. The ALJ also observed that a "June 2019 nerve conduction study ruled out chronic demyelinating polyneuropathy, and was only positive for at most mild left carpal tunnel syndrome, and so the chronic demyelinating polyneuropathy diagnosis is not substantiated by testing" [Tr. 17 (citing Tr. 764)].

The Court finds the ALJ appropriately evaluated Dr. Blaine's opinion, as he adequately articulated how he considered the consistency and supportability of the opinion, and he cited to relevant portions of the record to explain his determination. While the ALJ did not explicitly refer to the terms "supportability" and "consistency," it is clear he found that Dr. Blaine's opinion fell short in those areas. The ALJ highlighted portions of Dr. Blaine's own opinion and within the rest of the record that contradicted the limitations set forth by Dr. Blaine. Thus, the ALJ's decision to find Dr. Blaine's opinion to be not persuasive is appropriate, as he found the opinion and the limitations therein to be inconsistent with the medical record, 20 C.F.R. § 1520c(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."), and he determined that Dr. Blaine's examination findings and the objective medical evidence did not support his conclusions regarding the severity of Plaintiff's limitations. *Id.* § 1520c(1) ("The more relevant the objective medical

13

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical finding(s) will be.").

Plaintiff argues the ALJ misinterpreted Dr. Blaine's opinion and other aspects of the medical record, but this argument is without merit. It appears Plaintiff is inviting the reweighing of the evidence in this case, and "the court will not reweigh the evidence considered by the ALJ." *Seibert v. Comm'r of Soc. Sec.*, No. 17-13590, 2019 WL 1147066, at *2 (E.D. Mich. 2019) (citing *Big Ranch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013)). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). While the record may contain evidence of more severe limitations and although Plaintiff would interpret the evidence differently, the Court finds the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

2.      *Prior Administrative Medical Findings—Dr. Chung and Dr. Greco*

Plaintiff contends the ALJ failed to appropriately evaluate the prior administrative medical findings of state agency medical consultants Ok Yung Chung, M.D. ("Dr. Chung"), and James

14

Greco, M.D. ("Dr. Greco").[4]  The ALJ noted that Dr. Chung reviewed Plaintiff's file on November 30, 2018, and opined that Plaintiff was limited to light work with occasional push and/or pull with the left upper extremity, occasional postural activities except no climbing ladders, ropes, and/or scaffolds, limited left overhead reaching, limited left handling, limited left fingering, and avoidance of exposure to vibration and hazards [Tr. 17 (citing Tr. 74–78)].  The ALJ stated that Dr. Greco affirmed Dr. Chung's findings on May 7, 2018 [Tr. 17 (citing Tr. 543–44)].

The ALJ found Dr. Chung's opinion to be somewhat persuasive [Tr. 17].  The ALJ noted that Dr. Chung listed visual disturbances as a severe impairment [Tr. 72]; however, Dr. Chung provided no visual limitations in Plaintiff's RFC [Tr. 76–77].  The ALJ considered that Dr. Chung listed vision in the narrative analysis [Tr. 77], but Plaintiff's vision at Dr. Blaine's November 19, 2018, consultative examination was 20/16 across the board without glasses [Tr. 17, 540].  The ALJ acknowledged that Plaintiff had a Miller Fisher variant of GBS that can include paralysis of the eye muscles, but since Plaintiff saw an eye specialist in April 2018 where his vision was improved and, after considering Dr. Chung's examination results as well, the ALJ concluded that Plaintiff had a non-severe vision impairment [Tr. 17].  In addition, the ALJ noted that Dr. Chung's RFC assessment provided for a limitation on Plaintiff's left upper extremity overhead reaching to occasional but no impairment to reflect that limitation [Tr. 17–18].  Nonetheless, the ALJ still determined that Plaintiff had a severe impairment of left shoulder disorder [Tr. 18].  The ALJ

---

[4] Plaintiff does not appear to be challenging the prior administrative medical findings of state agency medical consultant Krishna Reddy, M.D. ("Dr. Reddy"), but the Court refers to it here for completeness.  The ALJ noted that Dr. Reddy reviewed Plaintiff's file on July 13, 2018, and opined that Plaintiff's physical limitations were non-severe [Tr. 17 (citing Tr. 59–60)].  The ALJ found Dr. Reddy's opinion to be not persuasive, as the medical evidence supported the severity of two of Plaintiff's alleged impairments—Miller-Fisher variant of GBS and a left shoulder disorder [Tr. 17].

15

stated that Plaintiff's June 2019 nerve conduction study resulted in a positive finding only for "mild at best" left carpal tunnel syndrome, leading the ALJ to find that the left carpal tunnel syndrome was a non-severe limitation and to remove the frequent left upper extremity handling and fingering limitation [Tr. 18]. Excluding the discrepancies noted by the ALJ above, the ALJ concurred with the remainder of Dr. Chung's medical findings—as adopted by Dr. Greco—and incorporated Dr. Chung's functional assessment into Plaintiff's RFC [Tr. 15, 74–78, 543–44].

Although the ALJ likewise did not explicitly use the terms "consistency" and "supportability" when assessing Dr. Chung's and Dr. Greco's findings, the ALJ's review and analysis of their findings still adequately address those factors. For example, the ALJ considered that Dr. Chung listed "visual disturbances" as one of Plaintiff's severe impairments [Tr. 72]; however, Dr. Chung's examination findings reflected that plaintiff had 20/16 vision across the board *without* glasses. Thus, it is apparent the ALJ found some of the limitations Dr. Chung provided were unsupported by her own examination findings. *See* 20 C.F.R. § 404.1520c(1). The ALJ's assessment also speaks to consistency, as the ALJ noted Plaintiff's vision seemed to be improving as reflected in April 2018 [Tr. 17, 502]. The ALJ also noted that Dr. Chung's RFC assessment provided for a limitation on Plaintiff's left upper extremity overhead reaching to occasional, but Dr. Chung included no impairment in relation to it [Tr. 17–18]. In any case, the ALJ still concluded that Plaintiff's left shoulder disorder was a severe impairment [Tr. 18]. Finally, the ALJ found that Plaintiff's alleged left carpal tunnel syndrome was a non-severe impairment because, despite a positive finding from Plaintiff's June 2019 nerve conduction study for left carpal tunnel syndrome, it was reported to be only "mild at best" [Tr. 18].

Given the above, the Court finds the ALJ appropriately evaluated the prior administrative medical findings of Drs. Chung and Greco. The ALJ noted that Dr. Greco affirmed the findings

16

of Dr. Chung [Tr. 17]; [*see* Tr. 544] ("RFC in file is consistent with the overall medical evidence, and is not unreasonable.")]. The ALJ's statement that Dr. Greco affirmed Dr. Chung's findings was therefore appropriate, and his analysis of Dr. Chung's prior administrative medical findings applies to Dr. Greco's findings as well. The ALJ sufficiently addressed the supportability and consistency factors of the prior administrative medical findings and provided ample support for his assessment. Remand for further consideration of the opinion evidence and prior administrative medical findings is not warranted in this case.

**C.     ALJ's Consideration of Plaintiff's Subjective Allegations and the RFC Finding**

Plaintiff asserts the ALJ improperly rejected his statements regarding the intensity and limiting effects of his alleged symptoms. Plaintiff contends the ALJ's analysis provides false equivalencies and improper inferences, resulting in an RFC that ignores any symptoms that are not detectable by objective testing such as fatigue and imbalance. In the decision, the ALJ stated,

> [a]fter careful consideration of the evidence, I find that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Tr. 16].

A claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 20 C.F.R. § 404.1529(c)(3).

17

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (Claimant challenged the ALJ's findings that claimant's testimony about disabling pain, other symptoms and functional limitations were not supported by the objective medical evidence and were not credible) (quoting *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)).  In addition,

> [t]he social security regulations establish a two-step process for evaluating pain . . . .  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016); *see Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p).  When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them."  SSR 16-3p.

18

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)). *See also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character");

19

*Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The Court finds the ALJ appropriately evaluated Plaintiff's subjective allegations regarding the severity of his alleged impairments in this case. For example, the ALJ considered the objective medical evidence [Tr. 18]. The ALJ noted that Plaintiff's "GBS, though severe, shows improvement on-schedule with regular neurological care and medication management [Tr. 18, 463–64, 493–94, 502, 513–15, 626, 730–32, 734–36, 739–40, 748–9, 756, 764]. The ALJ stated Plaintiff's left shoulder condition had improved from his initial injury that occurred over a decade prior to his alleged disability onset date, and Plaintiff did not require additional treatment on a regular basis [Tr. 18, 539].

The ALJ also considered Plaintiff's reported daily activities [Tr. 18]. The ALJ noted that Plaintiff reported "he is able to engage in multiple activities of daily living including attending medical appointments, engaging with his family members, driving, preparing meals, performing light household chores, and caring for his personal hygiene needs." [Tr. 18, 30, 37, 207–08, 210]. The ALJ properly considered many of the § 404.1529 factors, including Plaintiff's improvement with treatment and medication, Plaintiff's reported daily activities, the objective medical evidence, and—as detailed above—the opinion evidence. The Court finds there is ample evidence in the

20

record to support the ALJ's evaluation of Plaintiff's subjective allegations of disabling limitations.

Plaintiff contends that other evidence in the record may contradict the ALJ's findings regarding Plaintiff's subjective allegations. Even if that were the case, that does not invalidate the ALJ's analysis. The Court finds that the ALJ's evaluation was reasonable, and the ALJ appropriately cited to evidence in the record to support his findings. The Court therefore will not disturb the ALJ's evaluation of Plaintiff's subjective allegations.

Moreover, the Court finds Plaintiff's assertion that the ALJ failed to adequately develop the record is without merit. "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971)). While the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless of whether or not the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record.") (citation omitted); *Lashley v. Sec'y of Health and Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing"). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 404.1517.

Additionally, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). The Court notes that the ALJ had no "special, heightened duty to develop the record" in

21

this case because Plaintiff was represented by counsel. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002). Still, the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to develop the record fully and fairly. *See Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). Here, the ALJ was well within his discretion to not pursue additional guidance given the substantial evidence already in the record. Plaintiff has not established a basis for remand of his claim.

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge

22